Stephen R. Winship
(Wyoming State Bar No. 5-2093)
Winship & Winship, P.C.
100 North Center, Sixth Floor
P.O. Box 548
Casper, WY 82602

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE COLUMBINE GROUP, LLC. | ) | Case No. 10-20133 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM IN SUPPORT OF DEBTOR'S OBJECTION TO PINNACLE BANK'S MOTION TO DISMISS

**COMES NOW** the above named Debtor, by and through its attorney, and in further support of its Objection to Pinnacle Bank's Motion to Dismiss shows the Court as follows:

### I. FACTUAL BACKGROUND

The Debtor, Columbine Group, LLC ("Columbine") was created as a Wyoming Flexible Limited Liability Company in 1999 as shown by the Articles attached to Debtor's objection as exhibit "A". Samuel Tilden ("Tilden") is Debtor's sole member. As shown by Columbine's Operating Agreement attached to the Objection as Exhibit "B", Columbine's existence shall survive the bankruptcy of Tilden:

> Pursuant to Wyoming Statutes section 17-15-144(c), upon the death or bankruptcy of Tilden, or occurrence of any other event which terminates the continued membership of Tilden as a member of the LLC, the personal representative of Tilden's estate or other legal representative shall continue to

have the right to continue the business of the LLC.

On February 16, 2010, Columbine filed for protection under Chapter 11 of the Bankruptcy Code. On February 23, 2010, Tilden filed for protection under Chapter 11 of the Bankruptcy Code.

## II. ARGUMENT

A. **BECAUSE OF COLUMBINE'S OPERATING AGREEMENT, ITS DISSOLUTION IS NOT MANDATED**

Since Columbine is a flexible limited liability company, the most pertinent statute for the issue raised by the Bank is W.S. §17-15-144(c):

> Notwithstanding any other provision in this act, a flexible limited liability company is dissolved and its affairs shall be wound up upon the occurrence of any event described in W.S. §17-15-123(a) or upon the happening of any other event or events specified in the operating agreement, unless the business of the flexible limited liability company is continued either by the consent of all of the remaining members following the occurrence of any such event *or pursuant to a right to continue stated in the operating agreement*.

(emphasis added)

Since Columbine's Operating Agreement provides for "the right to continue the business of the LLC" in the case of Tilden's bankruptcy, the above statute contemplates the continued existence of an LLC such as Columbine. Tilden, as a debtor in possession, became the "legal representative", (as that term is used in the Operating Agreement) pursuant to 11 U.S.C. §§ 1107 and 1108. Not surprisingly, the legal representative has elected to continue the business of Columbine. Please note that the Bank relies upon Columbine's Articles in support of its position, but W.S. §17-15-144(c) looks only to the Operating Agreement on this

- 2 -

issue. Therefore the statute for flexible limited liability companies is more liberal than the dissolution statute for regular limited liability companies due to the statutory deference regarding mandatory dissolution shown towards operating agreements for flexible limited liability companies.

### B. MANDATORY DISSOLUTION OF AN LLC UPON THE MEMBERS' BANKRUPTCY IS AN UNENFORCEABLE IPSO FACTO CLAUSE

The issues presented by the Bank's Motion to Dismiss have been considered by other bankruptcy courts, which have refused to enforce statutes similar to Wyoming's to the extent they mandate the dissolution of the business entity seeking protection under Chapter 11. *In re Allentown Ambassadors, Inc.*, 301 B.R. 422 (Bankr. E.D. Pa. 2007); *Matter of Daugherty Construction, Inc.*, 188 B.R. 607 (Bankr. D. Neb. 1995). Two other cases have held that a single-member LLC's interest does not cause the dissolution of the LLC when the member files bankruptcy, but the interest passes to the Trustee. *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003); *Garrison-Ashburn, L.C.*, 253 B.R. 700 (Bankr. E.D. Va. 2000). See also *Riggs Nat. Bank of Washington v. Perry*, 729 F.2d 982 (4th Cir. 1984); *Matter of Lawson*, 67 B.R. 94 (Bankr. M.D. Fla. 1986); *In re Taylor Mfg. Inc.*, 6 B.R. 370 (Bankr. N.D. Ga. 1980). Further, it is federal law, not state law, that determines the interpretation of these LLC dissolution provisions. *In re Farmland Indus., Inc.*, 296 B.R. 497 (Bankr. W.D. Mo. 2003).

### C. THE BANKRUPTCY CODE PREEMPTS W.S. §17-15-123

Eligibility to be a debtor in bankruptcy is determined under 11 U.S.C. §109. The only requirement, insofar as Chapter 11 is concerned, is that the debtor be a "person" as that term is defined under 11 U.S.C. §101(41), and not be a railroad insurance company or certain

kinds of banking institute. See 11 U.S.C. §109(d) and *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir. 1985). (The list of persons excluded from filing under 11 U.S.C. §109(d) was intended to be exhaustive.) Indeed an unincorporated association, as that term is defined in 11 U.S.C. §101(9)(A)(iv), may file Chapter 11. *In re Miracle Church of God*, 119 B.R. 308 (Bankr. M.D. Fla. 1990); *In re Matter of Schatz Federal Bearings Co., Inc.,* 5 B.R. 543 (Bankr. S.D. N.Y. 1980). Wyoming has long recognized "de facto" corporations. *Grand Rapids School Furniture Co. v. Grand Hotel & Opera House Co.*, 72 P. 687 (Wyo. 1903).

When Columbine's Chapter 11 case was filed, there was no dispute about its eligibility to file for bankruptcy protection. Only a subsequent event – its sole member seeking protection from the same creditor that caused Columbine to file bankruptcy – caused Columbine's eligibility to be called into question. More important, it is a state law being given a retroactive effect, and not bankruptcy law that has rendered Columbine ineligible for bankruptcy protection. The implication of the Bank's argument is that it seeks to have this Court determine that state law has added another category of debtors under the Bankruptcy Code that are not eligible for bankruptcy relief – limited liability companies that post-petition and pre-discharge are involuntarily dissolved. See generally *In re Aldenete*, 412 F.3d 1200, 1207 (10th Cir. 2005) ("judicial legislation" is inappropriate). The other effect of a dismissal, as it affects the preemption concerns, is that it mandates a distribution scheme for property of the estate under state law, W.S. §17-15-126, rather than those allowed under bankruptcy law. This undermines the purpose of a uniform bankruptcy law under Art. 1, §8, cl. 4 of the Constitution. See *Central Virginia Community College v. Katz*, 126 S. Ct. 990 (2006).

Any state law that frustrates the full effectiveness of federal law is rendered invalid by the Constitution's Supremacy Clause (Art VI, cl. 2). *Perez v. Campbell*, 402 U.S. 637 (1971); *In re Hollytex Carpet Mills, Inc*., 73 F.3d 1516 (10th Cir. 1996). When there is a conflict between bankruptcy law and state law, it is the state law analysis that is suspended and preempted. *FDIC v. Torrefaccion Café, Inc*., 62 F.3d 439 (1st Cir. 1995). "If the duties of the corporation have not been fully discharged, the paramount jurisdiction of the Bankruptcy Court under Article 1, Section 8, cl. 4 of the Constitution of the United States attaches and may not be defeated by dissolution under state law." *In re Thomas*, 78 F.2d 602 (6th Cir. 1935)

There is a clear conflict between 11 U.S.C. §109 and W.S. §17-15-144 that would be created by the dismissal of this case since Columbine was eligible for bankruptcy relief when it filed, but the application of state law, by reason of a subsequent event, has rendered the bankruptcy filing a nullity. In this case, Wyoming law must give way to bankruptcy law.

**D.   DISMISSAL BASED ON WYOMING'S LLC LAWS WOULD VIOLATE THE BANKRUPTCY CODE'S ANTI DISCRIMINATION PROVISION**

11 U.S.C. §525(a) provides:

> Except as provided in the Perishable Agricultural Commodities Act, 1930, the Packers and Stockyards Act, 1921, and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943, a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act [former 11 USC §§ 1 et seq.], or

> another person with whom such bankrupt or debtor has been associated, *solely* because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

(emphasis added)

The sole reason that the Bank contends that Columbine cannot continue to seek the benefits of the Federal bankruptcy law is because its only member filed bankruptcy. In other words, if W.S. 17-15-144's inclusion of the bankruptcy of an LLC's members causes an otherwise viable reorganization to suddenly be subject to dismissal by a post-petition involuntary dissolution, 11 U.S.C. §525(a) has been violated. See generally *In re Kimsey*, 263 B.R. 244 (Bankr. E.D. Ark. 2001); *In re National Cattle Congress, Inc.*, 179 B.R. 588 (Bankr. N.D. Iowa).

### E. THE EQUAL PROTECTION CLAUSE IS VIOLATED BY THE DIFFERENT TREATMENT BETWEEN WYOMING LLC'S AND CORPORATIONS

The Equal Protection Clause of the Fifth and Fourteenth Amendments "embodies a general rule that states must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). An equal protection violation occurs when a governmental entity treats one person differently from another who is similarly situated. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996). See also *Griffin v. Illinois*, 351 U.S. 12, 19 (1956). The members of a Wyoming LLC and shareholders of Wyoming corporations are alike in all relevant aspects for bankruptcy purposes. There is no legitimate state interest advanced by

the discriminatory effect in a bankruptcy context caused by the disparate effect between shareholders in a Wyoming corporation and members in an LLC. There can be no rational basis for this added burden placed upon LLC's seeking protection under the Bankruptcy Code.

### F. DISMISSAL VIOLATES BANKRUPTCY POLICY

A dismissal sets a far reaching precedent under not only bankruptcy law, but also under Wyoming's limited liability company law. Rather than being unusual, it is extremely common that the members of small LLC's must guaranty the obligations and debts owed to the LLC's secured creditors and principle vendors (a nonrecourse loan for most small businesses is an extreme rarity). Thus, if a LLC files under Chapter 11 to reorganize these sort of debts, these creditors will oftentimes seek to enforce the guaranties against the LLC's members. According to the Bank's contentions, a Wyoming LLC bankruptcy must be dismissed if its members seek protection under bankruptcy. Such a potent creditor weapon undermines the basic tenet of bankruptcy law to allow a fresh start as well as equitable distribution of the estate's assets. See generally *In re C-TC 9th Ave. Partnership,* 113 F.3d 1304 (2nd Cir. 1997). Indeed, dismissal has the practical result of precluding many viable Chapter 11 bankruptcy filings simply because they were filed by LLC's.

### G. AN ENTITY UNDER THE PROTECTION OF BANKRUPTCY, WHICH BECOMES SUBJECT TO DISSOLUTION, SHOULD NOT HAVE ITS CASE DISMISSED

The Bank's position is effectively that an event that triggers dissolution causes the limited liability company to no longer be subject to bankruptcy court jurisdiction and protection under state law. However, Wyoming statutes and bankruptcy case law indicates a

contrary result. Wyoming's statutes instead refer to the LLC's continued existence. Indeed a "statement of intent to dissolve" pursuant to W.S. §17-15-124 must be filed to cause dissolution, which indicates a voluntary act[1]. Unlike Wyoming's Business Corporation law, there does not appear to be any procedure for judicial dissolution of a limited liability company when the members do not choose to dissolve the LLC. See W.S. §17-16-1430. Perhaps more relevant to this case is the provision in W.S. §17-15-125:

> Upon the filing by the secretary of state of a statement of intent to dissolve, the limited liability company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, *but its separate existence shall continue until a certificate of dissolution has been issued by the secretary of state* or until a decree dissolving the limited liability company has been entered by a court of competent jurisdiction.

(emphasis added)

Even though no statement of intent to dissolve has been filed, Columbine continues in existence rather than to have ceased to exist. This is confirmed by analogizing Wyoming's limited liability company laws to its corporate laws, which practice the Wyoming Supreme Court has adopted. *Kaycee Land and Livestock v. Flahire*, 46 P.3d 323, 327 (Wyo. 2002). In the case of *Catamount Const. v. Timmis Enterprises*, 193 P.3d 1133 (Wyo. 2008), the Wyoming Supreme Court found that even though a "defunct" Wyoming corporation was in Chapter 7 bankruptcy, it had standing to pursue pre-petition claims in state court. The same reasoning used by the Wyoming Supreme Court is applicable here since that decision is premised on the fact that corporations (like limited liability company) do not receive a

---

1. Wyoming law does not address what happens if a dissolution event occurs but no statement of intent to

discharge in Chapter 7, and that W.S. §17-16-1405 (which is similar to W.S. §17-15-125) acknowledges the continued existence of the corporation. There is no authority that would support that simply because Columbine became subject to dissolution a week after it filed Chapter 11, that Columbine simply ceased to exist[2].

Bankruptcy case law also recognizes the continued existence of a corporation already in dissolution at the time of bankruptcy filing, and allows such an entity to file bankruptcy. *In re Prism Properties, Inc*., 200 B.R. 43 (Bankr. D. Ariz. 1996); *In re McCullough and Co*., 199 B.R. 179 (Bankr, W.D. Mo. 1996). See also *In re Blackoats, Inc.*, 116 B.R. 550 (Bankr. N.D. Ohio 1990).

Granting the Bank's motion would leave Columbine (and other similarly situated Wyoming LLC's) in limbo. For those LLC's who want to continue to operate and therefore do not file the requisite statement of intent to dissolve, they may not look to the Bankruptcy Code for a remedy according to the Bank, and yet Wyoming's LLC laws do not address this situation. Apparently, then it will be left to the creditors and the "race to the courthouse" to dismember the LLC under the Bank's logic.

It should also be noted that any determination that Columbine must dissolve when its sole member filed bankruptcy implicates the automatic stay in that the effect of the member's bankruptcy filings under Wyoming's LLC statutes instantly allowed what was property of the estate to become subject to the foreclosure and execution by the Bank of Columbine's assets.

---

dissolve is filed with the Secretary of State or no actions are taken to dissolve the LLC.
2. A corporation that has been administratively dissolved is considered a *de facto* corporation. 72 A.L.R. 4th 411 (1987).

See 11 U.S.C. §362(a)(1) and (3).

## III.  CONCLUSION

The Operating Agreement of Columbine should be determinative of the Bank's Motion to Dismiss since it allows Columbine's business to continue even if its sole member has filed bankruptcy.  Further it is contrary to both the Constitution and bankruptcy law to dismiss a Chapter 11 by a retroactive application of state law based on the act of a third party – its sole member.  A limited liability company has a purpose and existence separate from its members.

DATED this 9th day of May, 2010.

THE COLUMBINE GROUP, LLC

By:_____/s/_____*Stephen R. Winship*_____
 Stephen R. Winship
 (Wyoming State Bar No. 5-2093)
 Winship & Winship, P.C.
 100 North Center, Sixth Floor
 P.O. Box 548
 Casper, WY  82602-0548
 (307) 234-8991

**CERTIFICATE OF SERVICE**

I, Stephen R. Winship, hereby certify that a true and correct copy of the foregoing **Memorandum in Support of Debtor's Objection to Pinnacle Bank's Motion to Dismiss** was hereby served *electronically* upon **Timothy Stubson, Brown, Drew & Massey, LLP**, this 9th day of

May, 2010.

                                               /s/ *Stephen R. Winship*
                                               Stephen R. Winship