Stephen R. Winship
(Wyoming State Bar No. 5-2093)
Winship & Winship, P.C.
100 North Center, Sixth Floor
P.O. Box 548
Casper, WY 82602

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE COLUMBINE GROUP, LLC, | ) | Case No. 10-20133 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |

**CHAPTER 11 DISCLOSURE STATEMENT**

The Debtor, The Columbine Group, LLC, (hereinafter "Columbine") provides this disclosure statement to all of its known creditors and interest holders in connection with its chapter 11 plan.

***Purpose of Disclosure Statement.*** Pursuant to Section 1125 of the Bankruptcy Code (11 U.S.C. §1125), Columbine is to submit this disclosure statement to the creditors, interest holders, and other parties in interest with adequate information so they will be able to make an informed judgment about the acceptability of the plan. The disclosure statement should contain sufficient information that would allow a hypothetical reasonable investor typical of the holders of claims and interests in the classes impaired under the plan to make an informed judgment to accept or reject the plan.

***Background of Columbine.*** Columbine is a flexible Wyoming limited liability company that was created in June 1998, and is in good standing with the Wyoming Secretary of State. Samuel J. Tilden ("Tilden") is Columbine's sole member and its manager. Columbine's principal business activity is its ownership of a hotel property

1

located in Laramie, Wyoming, which operates as the AmericInn Lodge and Suites. This hotel has 59 rooms and suites. (For more details see http://www.americinn.com/hotels/WY/Laramie) This hotel was constructed and began operating in 2008 as a franchisee of AmericInn International, LLC. The day-to-day hotel operations are managed by Hospitality Management, Inc. (also owned 100% by Tilden), which leases the hotel property from Columbine. Columbine has no employees. Columbine filed its Chapter 11 petition in the above referenced Bankruptcy Court on February 16, 2010.

*Factors leading to the Chapter 11 filing.* When construction on the hotel began, Laramie, Wyoming was experiencing a shortage of motel rooms, particularly rooms that were newer and upscale. Unfortunately Columbine experienced significant delays in the construction of the hotel property and dramatic, unexpected increases in the cost of building materials. By the time construction was finished or soon thereafter, a number of new hotel and motel properties were constructed in the Laramie, Wyoming area, and the entire country was entering a severe recession. Further hindering the expectations of Columbine's original business plan was that the new convention center in Laramie was built at a much reduced size. This problem of oversupply combined with the current recession, which has hit the hotel industry in this country particularly hard, caused Columbine's projected revenue figures to be inaccurate. Also Columbine's principal lender, Pinnacle Bank, and Columbine began disputing the payment terms of the loans from Pinnacle that financed the hotel's construction. Despite attempts to settle those loan disputes, Pinnacle commenced a foreclosure by advertising on the hotel property. In order to prevent the loss of the hotel, Columbine sought the protection of Chapter 11 bankruptcy.

*Operations in Chapter 11.*  Columbine and its Franchisee, AmericInn International, LLC negotiated an amendment to the franchise agreement that will lower Columbine's franchise fees and costs on an ongoing basis.  Further their agreement will significantly lower the pre-petition franchise fee arrearage that had accumulated.  To accomplish this arrangement on the franchise agreement, Columbine will have to borrow the sum of $25,000.00 from its principal, Tilden. Columbine has also negotiated an adequate protection agreement with its principal secured creditor, Pinnacle Bank, since filing for bankruptcy.  Columbine has experienced a sales increase that is projected to be 20% above its 2009 figures.  Management personnel of the hotel property was also changed whereby Mellissa Mortenson, the former assistant manager, assumed the manager's position and Karen Endsley, the former manager will be able to devote more time on marketing especially in the Laramie market.

*Management and Control.*   Sam Tilden is the 100% owner of Columbine and Hospitality Management Inc. He has a B.A. in Business Administration from Gettysburg College (Gettysburg, Pennsylvania). Tilden has been a resident of Wyoming for the last 37 years.  He previously developed and operated the AmericInn Lodge & Suites in Cody, Wyoming, a successful hotel operation.  That hotel was sold in 2005 prior to starting development of the Laramie property.  In connection with the development of the AmericInns, Tilden has completed the company's certified lodging training program and was elected to and served a three year term on AmericInn International's Advisory Board where he participated in formulating companywide policy on marketing, operations and construction.  As a result of Pinnacle's enforcement actions, Tilden has had to file in the above Court for protection under Chapter 11 of the Bankruptcy Court (Case No. 10-20160).

Mellissa Mortenson, the on-sight manager in Laramie, was previously the assistant manager at the hotel and has completed AmericInn International's management training program.

*How the plan will be effectuated*.  Columbine is filing a reorganization plan. The funds necessary for the plan payments will be made primarily from income generated by the hotel business.

*Financial Information.*  A summary of financial information for the 2008-2009 tax years is attached as Exhibit "A". A summary of financial information from the filing date through September 30, 2010 is attached as Exhibit "B." A projection of income and expenses is attached as Exhibit "C."

*Summary of Assets and Liabilities.*  Columbine's assets on the date of filing consisted of the following:

| Assets | Petition Date Value |
|---|---|
| Commercial Property | $2,740,991.00 |
| Office Supplies and Equipment | $   20,468.93 |
| Fixed Inventory – Hotel Furnishings/Fixtures | $  114,816.07 |
| Inventory | $     1,972.00 |
| **Total** | **$2,878,248.00** |

Please contact counsel for Columbine if you wish to review a more detailed list of the assets (the actual schedules filed with the court). Columbine has not had any of the property professionally appraised, and the "Commercial Property" is based on the valuation of the Albany County Assessor.

**Liabilities**

*Secured Claims*  Columbine has two secured creditors.

*Class One-* **Pinnacle Bank.** This creditor has filed its claim in the amount of $3,900,182.73, which is secured by a first mortgage position and lien against Columbine's real estate and improvements and all its inventory and equipment. The plan proposed to pay this creditor the allowed amount of its secured claim or $2,878,248.00[1]. This claim will be paid by extending the parties' adequate protection agreement payments through May, 2011[2] and the balance of the allowed amount of the secured claim then will be paid at 3½ % interest (the contract rate) based on a 30 year amortization with a balloon payment on the remaining balance due on the 120th month from the effective date of the Plan. The monthly payment anticipated to begin on May 1, 2011 is $12,924.52. The remaining amount of Pinnacle Bank's claim will be treated in Class 3.

*Class Two-***Small Business Administration.** This creditor, having filed a claim of $1,975,653.65, has a second mortgage on the same assets subject to Pinnacle Bank's senior security interests. Since there is no equity in any asset for this claim to attach to, SBA's claim is treated as an unsecured claim under Class 3.

*Class Three-Unsecured Claims***.** Non-insider unsecured claims total approximately $3,078,361.00[3]. Class three unsecured creditors will be paid annually on a pro-rata basis from the sum of $30,000.00 on August 30th of each year commencing 2012 and ending 2022. This will result in a pro-rata dividend of approximately 10% on the undisputed amounts.

---

[1] This amount may have to be adjusted to reflect adequate protection payments applied to the principal obligation.

[2] The adequate protection agreement provides in relevant part that Columbine will pay Pinnacle $5,000.00 for the months of November, 2010 through April, 2010.

[3] Approximately $634,059.00 of this amount represents duplicate claims filed in Tilden's parallel case.

*Class Four-Equity Security Holder*.  The equity security holder is Tilden who will retain ownership interest.

*Chapter 7 Liquidation Analysis*.   In the event of a liquidation under Chapter 7, it is quite probable that the unsecured claims would receive nothing.  Assuming the Chapter 7 trustee was able to sell the assets for the values estimated in this disclosure statement, the unsecured creditors would receive nothing.  In fact it is unlikely a Chapter 7 Trustee would administer the estate.

| | |
|---|---|
| Sale Proceeds | $2,878,248.00 |
| Less Mortgages/Liens | $5,107,843.00 |
| Less Priority Claims | -0- |
| Less Chapter 11 Administrative Claims | N/A |
| Less Sales and Auctioneer Commission (15%) | |
| Less Chapter 7 expenses | |
| Approximate Net Payment | -0- |

The exact amount will be greatly affected by the selling price of the assets.  The Chapter 7 trustee is paid as follows:

| | |
|---|---|
| 0-$5,000 | 25% |
| $5,000-50,000 | 10% |
| $50,000-1,000,000 | 5% |
| Above $1,000,000 | 3% |

 The payment of creditors through the chapter 7 liquidation would take approximately one to two years.  Columbine anticipates making distribution under the plan within approximately 40 days after confirmation.

**Administrative Claims**.  The only known administrative claimant consists of the estate's attorney, Stephen R. Winship and the United States Trustee for future quarterly fees. Mr. Winship was paid a $10,000.00 pre-petition retainer.  Counsel estimates that if the disclosure statement and plan are approved his post-petition fees and expenses will

total $2,500.00. Columbine is current on its other administrative expenses including the quarterly fees to the United States Trustee and will pay all fees required by law.

*Alternatives to Reorganization.* The management of Columbine intends to reorganize. Columbine could liquidate but it is highly unlikely that any funds would be available for unsecured creditors.

*Risk Factors.* Columbine is dependent on the existing management. If Tilden is unable to continue to serve in his present leadership role the business would probably have to be terminated. The success of this Plan is also dependant upon the continued rebound of the hotel industry.

*Existing Management and Proposed Compensation.* Tilden will continue as the managing member of Columbine. Tilden will defer his salary of $4,800.00 per month for at least until May, 2011. Mellissa Mortenson will continue to receive an annual salary of $50,000.00 (including benefits) per year (paid through Hospitality Management Inc.).

*Executory Contracts (Leases).* Columbine will assume its franchise agreement with AmericInn International LLC as modified. Columbine will also assume its lease with Hospitality Management Inc.

*Pending Litigation.* There is no pending litigation.

*Tax Consequences.* Columbine will not incur any tax liabilities as a result of the plan confirmation. You are urged to confer with your own tax advisor regarding the tax aspects of the plan.

*Preference and other related litigation.* The plan contemplates a consensual plan. Columbine does not intend to commence any litigation after confirmation other than possible claim objections. Columbine reserves the right to pursue such actions within the applicable statute of limitations.

*Voting Procedures.* After the approval of this disclosure statement, Columbine will mail a voting ballot with the plan and the approved disclosure statement. Creditors and interest holders with "impaired" claims are entitled to vote. A claim is impaired if the principal, interest, length of time for payment, or a combination of these is changed. The holder of an unimpaired claim is conclusively presumed to have accepted the plan and the solicitation of acceptances from holders of the unimpaired claims is not required and will not be undertaken. Under Columbine's plan all unsecured claims are impaired. All creditors and interest holders entitled to vote on the plan may cast their vote by completing, dating, and signing the Ballot included with this disclosure statement and mailing it to: Stephen R. Winship, PO Box 548, Casper, WY 82602. IN ORDER TO BE COUNTED, THE COMPLETED BALLOT MUST BE RECEIVED NO LATER THAN _____. A BALLOT DOES NOT CONSTITUE A VALID PROOF OF CLAIM IN COLUMBINE' CASE.

*Confirmation of the Plan.* Following the approval of this disclosure statement, the United States Bankruptcy Court for the District of Wyoming (Honorable Peter J. McNiff presiding) will hold a hearing to determine whether or not the reorganization plan should be confirmed. At the confirmation hearing, the court must determine whether or not the plan complies with 11 U.S.C. §1129. Among other things, the court must determine whether or not the plan has been accepted by each impaired class. Under 11 U.S.C. §1126(c), an impaired claim is deemed to have accepted the plan if at least 2/3s in amount and 1/2 in number of all allowed claims of class members actually voting have voted in favor of the plan. An impaired class is deemed to have accepted the plan if at least 2/3s in amount of the allowed interests have accepted the plan. Further, under 11 U.S.C. §1129(a)(7)(A)(ii) the court must find that each member of an impaired class will

receive or retain more than if Columbine were liquidated.  This is known as the "best interest of creditors" test.

*Confirmation of the Plan without the creditor's consent—Cram Down.*  The plan may be confirmed even if it is not accepted by all impaired classes, if the court finds that the requirements of 11 U.S.C. §1129 are satisfied and certain other conditions are met.  If the plan is not accepted by the impaired creditors or classes, Columbine will rely on the "cramdown provisions" of 11 U.S.C. §1129(b) and seek confirmation of the plan. Generally, the Columbine must show that the plan does not discriminate unfairly and that the plan is fair and equitable with respect to each class of claims or interests that is impaired under and has not accepted the plan.  In order to be fair and equitable, as required by 11 U.S.C. §1129(b) of the Bankruptcy Code, the plan must provide that creditors and interest holders in non-consenting, impaired classes will either retain or receive on account of their claims or interests, property of a value, as of the effective date of the plan at least equal to the value of such claims or interests, or if they receive less than full value, no class or junior priority will receive or retain anything on account of such junior claim. The plan must also comply with the absolute priority rule if the creditors reject the plan.  These are complex statutory provisions and this summary is not intended to be a complete statement of the law.

*Disclaimers*.   NO  REPRESENTATIONS  ABOUT  COLUMBINE, PARTICULARLY ABOUT COLUMBINE'S FUTURE OPERATIONS OR THE VALUE OF ITS PROPERTY, ARE AUTHORIZED BY THE COLUMBINE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.   ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE AN ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE

STATEMENT SHOULD NOT BE RELIED UPON BY A CREDITOR OR INTEREST HOLDER. ANY ADDITIONAL REPRESENTAION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE COLUMBINE OR TO THE UNITED STATE TRUSTEE (308 West 21st Street, Room 203, Cheyenne, WY 82001 307-772-2790).

The information contained in this disclosure statement has not been subject to a certified audit. The Columbine may not warrant or represent that all information in this disclosure statement is complete and accurate, although every reasonable effort has been made to provide complete and accurate information. Approval of the disclosure statement is not equivalent to a recommendation by or a finding by the court that Columbine's plan should be confirmed.

You are urged to confer with your own counsel and a tax advisor about the plan and disclosure statement.

DATED this 1st day of November, 2010.

Respectfully submitted,
THE COLUMBINE GROUP, LLC

By: _____
Samuel Tilden, Managing Member

By: _____
Stephen R. Winship
Columbine's Counsel

10